Novelog Bucks County Novolog I am very much puzzled. You will recall, you were in the courtroom, and the last question I asked your friend, was there any question in the district court that Novolog was a consignee? And he answered, no question at all. Now you open your argument in direct contradiction. Now why would he say that there was no controversy that Novolog was indeed the consignee? Because in order for him to prevail, he has to establish that Novolog was the consignee. Okay, who was listed as a consignee? That doesn't establish. Novolog was indicated in the documents as the consignee. Every time you take a load on a freight train, do you have to sit down and determine if the name on the document is actually the consignee? No, Judge. No, no, no, no, no. Okay, so you look at section 10743, and it says if you're listed as consignee and you're really the agent, you have to tell the railroad you're just the agent. Judge, every court that's ever looked at 107473 has rejected that argument because that relies to freight. Frankly, if you look at the plain language of the statute, I think it's very clear what it says. Because it deals with freight, Your Honor, not to merge charges, other charges. Well, and also, but not for additional rates that may be found to be due after delivery. What are those? They're not demerit charges. Other courts have found that they're not demerit charges. One did and one didn't. Well, that's true. That section's a freight section. So we're free to decide whether we do or we don't. Well, but that would be inappropriate because we're going to get back to this thing about... Why would that be inappropriate? Because these parties to the service contract, i.e. CSX and the shipper, cannot unilaterally designate Novolog as the consignee. That's the case law that's going back to Judge O'Neill called as being a legion to parties to a contract. Well, some of it is and some of it isn't. But if someone unilaterally puts you down as consignee and you're not, what are you going to do about it? I'm going to unload the steel when it gets to me and they are going to be free under their tariff to go after the shipper. They don't want to sue their customers. Well, if the shipper didn't cause the delay, the shipper's not going to pay the delay. If you caused the delay, shouldn't you pay the delay? Absolutely not. Why shouldn't you pay for the delay that you caused? Because we're not a party to a surface transportation contract, which is what their tariff requires. So you can cause as much delay as you want to without any liability? You know what, no. Is there no control over the delay you can cause? Absolutely, Judge. There's plenty of control. They can go sue the shipper. But the shipper didn't cause the delay. You caused the delay. But they still can go sue the shipper. That's the way they want the tariff. Okay, that's fine. You can delay as much as you want and the shipper will pay for it. That's a great system. Well, Judge, it may not be a great system, but under the tariff, that's the way it works. But also, it says here that if you're listed as consignee and you're not, you're just the agent, all you have to do is tell the railroad. Did you ever try to do that? Well, Judge, we're the agent. Did you ever do it? No. Why not? Because, first of all, Judge, we're the agent for a party that they're already in a contract with. Okay. And all you have to do is tell them that you're the agent for that party and everything's cleared up. If you tell them you're agent for that party, then you're no longer responsible. We don't have to tell them, Judge, because we're not responsible for the demerit charges. That's the point. We're not a party to the surface contract, so therefore we're not responsible for the demerit charges. They know that. That's why they had to prove that we were the consignee. That's why Judge O'Neill specifically bailed. Well, it's not hard to prove you're the consignee when you're listed on the documents as consignee. No, no, Judge. They're out-of-court statements. They can't even establish those documents come bail as a result of shippers go on CSX's webpage. We raise this issue a lot. Shippers go on CSX's webpage. They designate some third party designates us as the consignee and CSX delivers the product. We don't agree to be the consignee. We don't agree to accept demerit charges, and they can't even establish it because they can't even bring the person under the business record exception into the courtroom because they didn't do it to establish that it was a business record. You don't even have to accept the frame cards. No, we don't have to do it. No, we don't. When you do accept the frame cards, we did accept the frame cards. Well, to the extent that the consignee has not paid the frame, you pay the frame. No, the consignee. When you accept the frame cards, don't you have some responsibility to get the frame cards unloaded and back into the... Absolutely, Judge. In March of 2003, what happened was that the price of steel fluctuated so that all this steel made a run from the Midwest and Novoland was one of the few deep water ports on the East Coast. Okay? And Novoland tried to... The evidence below the trial, because we actually tried Novoland's counterclaim, was that Novoland intended to work with CSX and Norfolk Southern and try and deal with this problem. It wasn't like they were just sitting around, Judge, waiting for the Eagles games to start. They were trying to move the steel and get it out as quickly... They wouldn't win anyway, but... But they're trying to get the steel out as quickly as possible because steel was going outside of the country at a rate never before seen. And when the price fluctuated, it would be over. So the ship of CSX knows all these cars are running here. CSX is entering into these contracts quickly because, one, they don't want to lose the business to Norfolk Southern, and, two, because they want to just take the business. And then it all bottles up at Novoland. And if they're offering the business, they've got to take it, right? No, they'll have to take the business. CSX didn't have to take the ship. No, because Norfolk Southern couldn't. Because many of the steel companies, and this came out of trial, were served by both Norfolk Southern and CSX. So if CSX didn't take it, Norfolk Southern wouldn't have been able to under the circumstances in this time period when many of the tracks in the Midwest. So what happened, Your Honor, was that CSX and these steel companies enter into these contracts. If the steel got hung up at Novoland, as it did, the CSX has a right under their tariff to go after every court has held this, that it is a conditioned precedent that they must go after someone who is reporting to a surface transportation contractor or that someone who has independently agreed to be contractually bonded as the consignee. The only issue in front of Judge O'Neill, and Judge O'Neill looked at this carefully and looked at all the evidence, was whether or not Novoland was the consignee. And in fact, contrary to what was said, the 12 invoices that were submitted to Novoland did not even match up to the cards at issue. But we never got to that, because what Judge O'Neill properly found, following every case, every single district court that has ever looked at this. No, I've read the cases. Some of them you can interpret they did and some didn't. Well, and the ones that they didn't, Your Honor, was because there were some questions as to whether or not the party who actually handled the freight was ultimately the party who owned it and the actual consignee. It was suggested that under section 10743, or in A, I know it's all clear, maybe A6, that the consignee has the burden to tell the shipper that it is only an agent. Is that an accurate statement of one? Let me get it both out. Is that an accurate statement of the statutory provision? And if so, did you do that? It is if we were the consignee. We were not the consignee. Well, does the statute say, suggest that the consignee is the name of the company that is listed on the documents as the consignee? No, the statute is silent, and what the case law has said is that two parties, it's the Supreme Court case, the EEOC case that we cite, the parties to the transportation contract, i.e. CSX and the steel shippers, cannot create liability for rights, duties, obligations, and liability for a third party. But that case didn't deal with section 107.43. No, it's just straight out of contract law, but I'm trying to answer your honest question. Well, my question is, when you look at the statute, and the statute says the consignee has this burden, responsibility, is it not a reasonable interpretation of the statute that it referred to the party listed on the documents? No. No, Your Honor, it has to be the consignee. You have to first establish the plaintiff bears the burden of proof of establishing that we're the consignee, and then if that statute applied, which it doesn't because it goes to freight, not to marriage charges, which other courts have rejected, the CSX still bear the burden of establishing that we were the consignee, and we cannot be unilaterally appointed the consignee by two parties to a contract to which we're not a party. So the answer to your question is we do not have the burden of telling them that we're not going to accept an obligation that could not legally and legitimately be placed upon us in the first place. A matter of curiosity, the steel that Norfolk Southern shipped, where did they ship it to? Southern came through Niagara. And have there been any problems with the marriage with Norfolk Southern? Absolutely not. And there would be no problem with the marriage in this case. If CSX wanted to collect a marriage, they could sue the shipper. They'd choose not to. But why would the shipper pay if the shipper was not responsible for the demerge? Because the shipper was deported to a service contract, and by entering into a service contract with the railroad, you become liable for demerge. That's why they would pay. Well, you become liable for your demerge, but do they become liable for your delay? And you know what, Judge? And they would pay, and then they would sue Novolog, and then they would have a breach of contract case against Novolog. And so it would all get worked out that way. So it's not like Novolog, Your Honor, would stand around and get away scot-free. If the shipper, if CSX decided to sue the shipper, and under the tariff, as they're reporting, they meet the condition precedent of having a contract, then the shipper could then turn around and sue Novolog for breach of contract. And, again, there was no evidence down below that there were any contracts between Novolog and the shippers, but there would be recourse against Novolog on behalf of the shipper, but not on behalf of the railroads. Now, counsel, did the district court make a finding as to whether your client was the consignee? Yes, he found that the only evidence that he found that we were not the consignee, and, in fact, the district court of Louisiana case cited by counsel from the amici, that court recognized the same thing in Novolog. Well, I think, excuse me, I think Judge Alderson was saying, in this case, am I wrong? Correct. Exactly. Yes, in this case, Your Honor, Judge O'Neill found that they had not met their burden of establishing that we were the consignee because the only evidence were hearsay, bills of lading,  Oh, just a minute. Now, you say that she made, the district court made this finding. Yes. Now, that seems to be controverted. Do we have to decide whether that finding was clearly erroneous? No, because the CSX didn't appeal that finding. That's the whole point. That's in my brief. They did not appeal the factual finding. All they did is argue that the legal issue, they actually changed it. Your friend on the other side goes one further. He said there wasn't any controversy that you were the consignee. I guess he meant that on the papers, on the papers you were listed as a consignee, right? But that doesn't mean correct. Well, no, on some of the bills of lading, we were listed as a consignee. And footnote, Judge O'Neill's opinion, in fact, some of the bills of lading did not list us as a consignee. Do we have that in the appendix? Yes, Judge O'Neill's opinion is in the appendix. Well, it's in the blue brief. Yes, it's in both the briefs. Could you tell us, because this is important, where Judge O'Neill made the finding that you were not the consignee? What page of his opinion? On the number of pages, my hypothesis, I have the Westlaw opinion in front of me, Your Honor. But first of all, he notes footnote 2 is the one I was just talking about, about the only legible and compensable portions of the sport. Yes, I see that. But it doesn't say anything about. Correct. It says these documents show the point of origin to be. . . If you look. . . Fairness PA. Correct. Judge, if you look at, I'm looking at star 6, which is the right around footnote 11. C.S.X. argues that Novaroff is liable for his demerit charges because Novaroff is named as a consignee on each electric bill of lading. C.S.X. delivered the cars and congestion at Novaroff's port caused the railroad cars to do that. I disagree. Well, he disagreed. Not clear. Which of the various propositions does that I disagree refer to? Does it refer to Novaroff was named as consignee or that C.S. . . . You know, there are three propositions. Or does it disagree with liable? Well, he disagreed, but there was no dispute, just so the court understands, there was no dispute that Novaroff accepted and received the rail cars from C.S.X. There was no dispute about that. And there was no dispute that there was a delay. There was no dispute about that. The only issue and dispute was whether or not Novaroff was the named consignee. And if I can go on. Well, they were the named consignee on the documents. You're right. They were the named consignee on some bills of lading prepared over a computer by some third party not identified by the district court. Okay. But they are named. It is named as the consignee on I don't know what percentage of the documents. My guess is a substantial. I'm sorry. I assume that it was named as consignee on a substantial number of the documents. There was actually a dispute about that in the water court, and we talked about it in the footnote in our brief. But Judge O'Neill never got to that because he found, as did all the other cases at Star 8 in the Westlaw opinion, that the cases are legion in holding that responsibility for demerge charges cannot be imposed unilaterally against an individual or entity that was not a party to either a transportation contract. Our counsel, is it unilateral when you, Novalog, accept the freight for which you are named as consignee? Is that unilateral? No, Your Honor. That's the actions of Novalog, and that was the Evans case from the Seventh Circuit where the Seventh Circuit found that merely accepting and handling the cars was not sufficient to make the acceptor or the handler or the port, like Novalog, a consignee. Every court has rejected these arguments that by being on the door of lading or by accepting the freight, you become a consignee. And let's not forget that in the brief below in the argument— Now, excuse me. See, I'm a couple thousand miles away from you, and you speak pretty rapidly. And I'm not the youngest guy on the block. Can I start out with some basics? Is it the general practice and rule that the consignee pays for demerge? Is that the general practice? Under the tariff, they may collect from—yes, the railroad may collect from the consignee who is a party to a concert. All right. You have to have patience with me because I'm using logic here now. Okay. Now, if that is the major premise, and if we assume that the preponderance of the evidence shows that on the basis of the written documents, Novalog was the consignee— Well, no, that's the point. That's where the breakdown is. We cannot assume that because that is a fact by the different court. All right. You are saying that it was not the consignee in any of the freight cars involved. Correct. The only evidence. But he's saying even though it was named as the consignee. Yes, even though it was named as the consignee, it was not the consignee. All right, fine. Okay, then I say that if that's the case, that is your syllogism. Therefore, you're not liable. Well, it's not a syllogism, Judge. It will have to be liable. Only the party to a service contract can be liable, and parties cannot unilaterally— Well, doesn't that fly in the face of general railroad practice? No, that's the—I'm sorry. Well, we start out with a composition that you admit that generally the consignee pays divorce. But then you are saying you are not the consignee. Right. You have a burden. You have to prove that. That even though the written documents show you as a consignee, right? Is that right? You have a burden of showing that you are not the consignee if the documents show that you are. No, that's not the law, Judge, and that's where we are going to disconnect. Okay, fine. Well, we can follow that. We're going to follow that. I hear your argument, Counselor. In all due respect, I don't understand it, but go ahead. Well, that's my part, right? Let me see. You have your red light on, but I think you're answering a question, so please— Right. Explain to the panel why if you are named as the consignee in the written document, whether it's called a waybill or something like that, you are nonetheless not the consignee. For a couple of reasons. Let me start with some of the basic fundamentals. There's the shipper, which is called the consignor. That's the steel company. Got that. There is the ultimate party that accepts the steel, who's going to take title to it. Judge O'Neill talked about this in the footnotes. That's the consignee. All right? Even though it is not named as the consignee. Correct. Because what happened, Judge, and this was in the record below, is when you go onto CSX's website and designate where the steel is to go, one of the fields is consignee. And so when the steel company wants to tell CSX where to take it, there's no space for a port, there's no space for a handler or a warehouse. It's just going to this person who's been designated as the consignee. That doesn't make them what Judge O'Neill talked about, is the legal consignee, which is the person to whom ultimately will take delivery of the goods and title to the goods when we talk about consignor, shipper, and consignee. But that person is not identified on the waybill. Correct. The ultimate destination for these goods, because, again, they were going overseas, was not identified on the waybills. The only thing that was identified on the waybills created by CSX and the shipper is that we were the consignee. And what the cases have said is that you may not unilaterally, just because on a waybill, and all these cases arise under the same facts. But the cases have many different descriptions of where the goods are going. Some is like Matson line as agent or. Some is simply Matson line agent. Some of them is Matson line consignor. And the cases that you cite are not clearly in line with the proposition that you're citing them for because they are not, as you have here, with Novolog being consignee. And these cases have various different degrees of description for the fact that 95% listed the port as agent and 5% listed it as consignee, so the railroad should have known the difference. And what you are presenting to us as a solid, clear line of cases have a lot of ambiguities in them that I don't think enable you to support the cases you're citing or the clear rule that you're citing it. But they have a lot of ambiguity, Judge Roth, in a lot of areas except for one, and that is they are all in unison, and that's what Judge O'Neill called legion, that you cannot unilaterally appoint someone as the consignee and make them the consignee. And you start from the premise that Novolog was the consignee. The only evidence below that Novolog was the consignee, Novolog has disputed that it was the consignee from the day the case began. The only evidence below was in the bill of ladings that had been unilaterally created by either CSX or the shipper, they designated that we were the consignee. What the cases of legion, and what Judge O'Neill talked about in the city of Pensacola case, in all these cases, was that you cannot unilaterally say, hey, Novolog, you're the consignee, therefore, you're going to be responsible for demerit charges. That's where the cases do not vary. On that particular issue, they vary on what they're called. And in some cases, Your Honor is correct, you've picked up on them. And the subtlety of the case is that sometimes someone may have only been a warehouseman, but they were going to take title to the goods. And in those cases, the district courts were perceptive enough to recognize that in those instances, you can say that you're only going to be a warehouseman, but if you're going to eventually take title, that makes you a consignee, and that's one of the cases that's in the bill. I have just one question. I know your time is just short. And I'm going to ask you a question, and I want you to answer yes or no. Okay. Do you understand the question? Yes. Did Novolog accept this freight? Yes. Thank you. Thank you, Your Honor. Thank you. We'll hear a rebuttal from Mr. Keenan. Amicus doesn't give a damn. Thank you, Your Honor. I first of all wanted to point out that there certainly is a spot in any box for a shipper to list a consignee as an agent. It's not every day. It's done millions of times. So the shippers here clearly could have designated Novolog as an agent. Does it follow from that that if the shipper didn't designate Novolog as an agent, then Novolog should not be held liable? No, they're a principal consignee, and they are liable. For example, in Amitek, Amitek was a care of party. You could do that. A shipper could list. In fact, Amitek was very good because Amitek went to Board Warner and said, You list me only as a care of party so that when these freight deliveries are made, I'm not responsible for a demerge. And this court held that was correct. Under an agency analysis, the consignee was a care of party and therefore not liable. Novolog didn't do that. Novolog was the sole name consignee. Novolog argues, and I'd like you to answer this because it concerns me, that it was a third party that listed it as the consignee, and it had no relationship, no surface transportation contract, I think he said, with the shipper. And therefore, why should Novolog, who had no relationship with the shipper, have to pay the demerge charge because it didn't approve the shipper's listing of it? As I understand his argument in a nutshell. How do you answer that argument? The simple and direct answer is because they accepted the freight. That's the direct answer. They could have refused it, and they did not. What would happen to the transportation system in this country if all of these facilities where the trains go would say, we're not going to take your train, you're not going to take your shipment? It's brought back to origin. Wouldn't that cause havoc? Yeah, so that's why you want the consignee, or whether it agrees with how it's described or not, to take the goods, and if it feels it is only the agent to notify the railroad, I'm taking these as agent rather than as consignee. Consignee. That's consignee. Consignee, yeah. I mean, in Madison, Madison was not the name consignee on the vast majority of the bills of lading. They were a care of party. In South Tech, they were listed as a stopping point on the bills of lading, with 90% of the bills of lading listing Donnelly as the consignee. And in Ametek, Ametek was a care of party. And in Pensacola, Pensacola was a care of party. Every one of those cases had an agency analysis. So it's your argument that because Novolav did not either accept the railcars or didn't require, didn't notify the railroads that in the future it wouldn't accept these railcar shipments unless they designated who was the ultimate consignee, Novolav should be liable. Correct. They should have rejected the freight when it was being brought in. And don't forget, Novolav received this freight over a period of eight months. I mean, this wasn't just one shipment. They were getting demerit bills. Everyone was rolling along, and only way later after the fact, they say, oh, by the way, we were an agent. Counsel, I'd like to ask, we know that demerit started in maritime law, okay? Now, and it certainly is part and parcel of our modern transportation system. I'd like you just to tell us what really is the basis for enforcing the concept that the consignee is responsible for demerit. Is it a contract or is it an implied contract? Is it custom or is there a statute? Tell us, what is the legal underpinning of this tradition? When they accept the freight, they become a party to the transportation contract. And as a party to the transportation contract, they then become governed by the applicable tariffs. Demerit is not something that's discretionary, as was previously pointed out. The railroads are obligated to collect it under their tariffs without excuse, without, I mean, it absolutely must be done. And the tariffs can only be challenged in front of the STB. Okay. Thank you. Thank you. We will take this interesting case under advisement. Thank you. There was just one other point I just wanted to mention, and that is there are copies of some of the actual Bill of the Lady in the appendix beginning at 142. That's where John should walk, right? Thank you. Okay. We're going to proceed.